UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

BERNARD FULLER,                              :

                        Petitioner,          :    **REPORT AND**
                                                  **RECOMMENDATION**
            - against -                      :    **TO THE HONORABLE**
                                                  <u>**RICHARD J. HOLWELL**</u>
                                             :

SUSAN I. SCHULTZ,                            :    04 Civ. 5065 (RJH)(FM)

                                             :

                        Respondent.          :

---------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.    <u>Introduction</u>

            Bernard Fuller ("Fuller") brings this habeas petition pursuant to 28 U.S.C.

§ 2254 ("Section 2254") to challenge his conviction arising out of his plea of guilty to

three counts of Burglary in the Third Degree in Supreme Court, New York County.  In his

petition, Fuller claims that (a) his guilty plea was involuntary, (b) he was improperly

denied an evidentiary hearing regarding an unduly suggestive show-up, (c) he was denied

the effective assistance of counsel, and (d) he was the victim of various due process

violations that rendered the state court proceedings fundamentally unfair.  For the reasons

that follow, I recommend that Fuller's petition be denied.  Additionally, because Fuller

has not made a substantial showing of the denial of a constitutional right, as required by

28 U.S.C. § 2253(c)(2), a certificate of appealability should not issue.

A.    Factual Background

The case against Fuller arose out of three separate incidents between January 4 and April 13, 2001, during which Fuller removed wallets that did not belong to him from unattended offices in buildings in lower Manhattan.

1.    Burglaries

On January 4, 2001, while he was employed as a messenger, Fuller entered an office building on West 27th Street to make a delivery.  (G. 3-4; P. 12-13).[1]  Patricia Whitehurst ("Whitehurst") noticed Fuller exiting her private office as she was returning to it.  (G. 4).  After he left, Whitehurst discovered that her wallet containing four credit cards was missing.  (Id.).  Whitehurst called Fuller's messenger company, which confronted Fuller and secured the return of her credit cards (but not her wallet).  (Id. at 5-6).

On April 11, 2001, Fuller entered an office building on West 15th Street. (G. 19-20; P. 15-16).  As she was walking to her office, Susan Grennan ("Grennan") noticed Fuller crouching behind her desk.  (G. 20).  In response to her questions, Fuller

---

[1]    "G." refers to the grand jury minutes.  "H." refers to the pretrial hearing transcript. "P." refers to the transcript of Fuller's guilty plea.  "S." refers to the transcript of his sentencing. "Ex." refers to the exhibits annexed to the Declaration of Assistant Attorney General Frederick H. Wen, dated Feb. 16, 2007 ("Wen Decl.").  "Pet'r's Br." refers to Fuller's brief on appeal. "Resp't's Br." refers to the People's brief on appeal.  "Pet." or "Petition" refers to Fuller's habeas petition.  "Addendum" refers to the additional papers that Fuller served on December 28, 2006. "Resp't's Mem." refers to the Respondent's memorandum in opposition to Fuller's Petition and the Addendum thereto.

falsely claimed to be an employee from the "eighth floor" who was attempting to see whether his pen was working. (Id.). Several hours later, Grennan's credit cards were found in a dumpster outside her building. (Id. at 20-21; H. 31-32). She then discovered that her wallet and checkbook were missing. (G. 21).

Finally, on April 13, 2001, Fuller returned to a different office in the same building on West 15th Street, from which he removed a wallet belonging to Makeda Garvey ("Garvey"). (G. 25; P. 17-18). Garvey intercepted Fuller before he was able to leave the building and screamed to summon her boss. (G. 26). Fuller then handed Garvey her wallet and attempted to flee, but he was detained by others. (Id.). Hearing the commotion, Grennan looked outside her office and recognized Fuller as the person who had been in her office two days earlier. (Id. at 21-22). Grennan subsequently saw Fuller in police custody. (Id. at 22).

### 2. Post-Arrest Confession

After he was arrested and given Miranda warnings, Fuller admitted taking a wallet from a bag in an "unoccupied" office on the date of his arrest. (H. 28-30). As he explained, he placed the wallet in his back pocket, but later surrendered it when a woman "started to scream." (Id. at 28-30). Fuller further admitted that he had stolen another wallet from the same building two days earlier. On that occasion, he placed the wallet in a dumpster for safekeeping while he attempted to find a means to "get rid of" the credit

cards in the wallet. (<u>Id.</u> at 31-32). Fuller noted that when he returned to the dumpster to retrieve the wallet, a man told him that he had returned it to its owner. (<u>Id.</u> at 32).

3.    <u>Indictment</u>

On April 14, 2001, Fuller appeared for arraignment on a criminal complaint which contained charges arising out of the April burglaries and the case was adjourned to April 19, 2001, for grand jury action in Part F. (Wen Decl. Ex. E at 1-2). Two days later, Fuller was arraigned on additional charges arising out of the January burglary. (<u>Id.</u> at 2). Because the arraignments took place on separate days, each case was assigned a separate indictment number by the court clerk. (<u>Id.</u> at 2-3 n.2).

Based principally upon certain entries on his rap sheet, Fuller contends that two grand juries returned separate indictments and that the first grand jury declined to indict him on any charges arising out of the April incidents. (Pet. ¶¶ 12.C, 12.D (Attach)); Addendum at 1; H. 5-9). The grand jury minutes that he has produced establish, however, that the grand jury presentation concerning all three incidents occurred on April 18, 2001, after which only a single indictment was returned. (G. 37-38; <u>see also</u> Wen Decl. Ex. E at 2). In that indictment (Indictment Number 2325-01), the grand jury charged Fuller with three counts of Burglary in the Third Degree (in violation of New York Penal Law ("PL") § 140.20), eleven counts of Grand Larceny in the Fourth Degree (in violation of PL § 155.30(4)), eleven counts of Criminal Possession of Stolen

Property in the Fourth Degree (in violation of PL § 165.45(2)), and one count of Criminal Impersonation in the Second Degree (in violation of PL § 190.25(1)).  (G. 36-38).

When the cases corresponding to the two previously-assigned indictment numbers were called on May 9, 2001, Justice Micki Scherer noted that she had been furnished only one indictment corresponding to the first-filed case.  (Addendum (Attach) (Minutes of proceedings before Hon. Micki Scherer, dated May 9, 2001 ("May 9 Minutes"), at 3)).  The Court Clerk agreed with Justice Scherer that there appeared to be two indictments.  (Id.).  Subsequently, the Assistant District Attorney appearing before the Justice that day telephoned Assistant District Attorney Melissa Jampol, to whom the two cases were assigned.  (Id.).  After speaking with Ms. Jampol, the Assistant District Attorney confirmed that "the second arrest was after the arraignment on the first," and that the People had secured only one indictment after a single grand jury presentation.[2] (Id. at 4-5).  As the prosecutor further explained, Ms. Jampol "did not present the case twice."  (Id. at 5).  Justice Scherer responded, "Okay.  So we'll straighten out that paperwork later on."  (Id.).  It appears that Justice Scherer subsequently consolidated the two cases – which had resulted in the return of only a single indictment – under indictment number 2325-01.  (See Wen Decl. Ex. E at 2).

---

[2]     The grand jury witnesses were questioned by yet another prosecutor, Assistant District Attorney Jeffrey Chabrowe, who presented charges related to all three burglaries for the grand jury's consideration.  (G. 1, 37-38).

During his May 9 appearance before Justice Scherer, Fuller entered a not guilty plea. (May 9 Minutes at 6). The People then offered him an opportunity to plead guilty to the three burglary counts in exchange for indeterminate sentences of two to four years on each count, to be served consecutively. (Id. at 6-7).

4. Huntley Hearing

On August 15, 2001, Justice Jeffrey Atlas held a pretrial Huntley hearing to determine the voluntariness of the statements that Fuller made to the police following his arrest.[3] Before the hearing began, Justice Atlas gave Fuller an opportunity to plead guilty to the three burglary charges in exchange for a sentence of one and one-half to three years on each count, to be served consecutively. (H. 3-4, 13). Justice Atlas noted the "substantial likelihood" that Fuller would be considered a discretionary persistent felony offender, and therefore receive a maximum sentence of life in prison, if he were to be found guilty after a jury trial. (Id. at 2-3). After Fuller's counsel explained that Fuller had secured a copy of his rap sheet which suggested that some of the charges against him might have been dismissed, Justice Atlas reviewed both the rap sheet and Fuller's court file. (Id. at 7-10). The Justice initially suggested that the rap sheet might be forged, but then concluded, and explained to Fuller, that one of the criminal court complaints might have been dismissed by a criminal court judge. (Id. at 6-7, 11). As he noted, however,

---

[3]     See People v. Huntley, 15 N.Y.2d 72 (1965).

once the charges were "reinstated" by the grand jury, "the fact that it says dismissed . . . doesn't mean anything." (Id. at 12).

Although Fuller indicated that he needed more time to investigate the circumstances leading to the dismissal, Ms. Jampol cautioned him that the People's offer would be withdrawn unless he pleaded guilty before the Huntley hearing. (Id. at 13). Thereafter, the People called a police detective as a witness. (Id. at 17). On the basis of that testimony, which was uncontradicted, Justice Atlas found that Fuller's post-arrest admissions were made voluntarily after he had been given his Miranda warnings. (Id. at 74-76).

     5.    Plea

On October 15, 2001, just before Fuller's trial was slated to begin, Justice Laura Drager advised him that she would "seriously consider" imposing the maximum sentence, and might treat him as a discretionary persistent felony offender, resulting in a sentence of fifteen years to life, in the event of a conviction after a trial. (P. 3, 7). Justice Drager also told him that if he pleaded guilty, he would receive a sentence of two to four years on each of the burglary counts to be served consecutively. (Id. at 2-3). The Justice added, "I don't care whether you plead guilty or not . . . . It is your right to go to trial. But I think it is important for you to understand the potential consequences you face if you are convicted because I think it is only fair . . . you should have as much information available to you." (Id. at 4). Finally, the Justice advised Fuller that it was "almost a

certainty that there will be substantially greater penalties if you are convicted of all of these offenses."  (Id. at 4-5).

After the Justice made these remarks, Fuller and his attorney, Daniel Scott, conferred.  (Id. at 5).  Subsequently, Fuller expressed considerable frustration that his attorney was not supporting his position regarding an acceptable plea bargain.  (Id.) (Fuller:  "Why don't you ask for something?  At least ask.").  He also complained that his lawyer had not conveyed to the People his willingness to accept a plea offer of "one-and-a-half to three," alleging that his counsel had told him that the People were unwilling to extend such an offer.[4]  (Id. at 8-9).

Fuller eventually begrudgingly indicated that he would accept the plea bargain.  (Id. at 10) ("I'll take the fuck – I'm going to take the 6 to 12.  Fuck it.").  The following colloquy then ensued:

> The Court:     Mr. Fuller, have you discussed the plea with your attorney?
>
> Fuller:          No, I made up my own mind.  I didn't discuss it with nobody.  There's nothing to discuss.

---

[4]       Contrary to the latter assertions, the transcript of the Huntley hearing plainly indicates that Justice Atlas told Fuller and his counsel that an aggregate sentence of two to four years was "absolutely out of the question" and "never going to happen," but that a sentence of "four and a half to nine, which is one and a half to three on each of the burglary charges consecutive" seemed "just."  (H. 4).  The Justice further cautioned, however, that if the hearing was conducted, he was "not going to ask the district attorney to offer four and a half to nine which apparently she was willing to do."  (Id. at 12).  The prosecutor reiterated that this offer would be withdrawn if the hearing was held.  (Id. at 13).  Thereafter, the hearing proceeded because Fuller was unwilling to plead guilty.  (Id. at 15-16).

The Court:     Fair enough, but you had the opportunity now having three different attorneys to discuss this with?  Is that correct, Mr. Fuller?[5]

Fuller:        I discussed it with myself.

The Court:     Okay.  And your attorney is sitting next to you; is that correct?

Fuller:        I don't have no attorney now.  What I got an attorney for?

                              *     *     *

The Court:     I want to be clear that whether you have chosen to avail yourself of your counsel's advice or not . . .

Fuller:        What advice?  He's said nothing for me.  I just told you I agree with everything.  I'm taking the twelve – six to twelve.

The Court:     And you do have an attorney sitting next to you, yes?

Fuller:        Yes, I have one sitting here.

                              *     *     *

The Court:     Is anyone threatening you or forcing you to get you to plead guilty?

Fuller:        Yeah, the DA.

                              *     *     *

---

[5]        After Fuller's initial arraignment, Jonathan Sims, Esq. was assigned to represent him.  (See Addendum (Attach) (Minutes of proceedings before Hon. Matthew Cooper, dated Apr. 19, 2001, at 2)).  Subsequently, Mr. Sims was assigned to replace another attorney who had been assigned to represent Fuller in connection with the second arraignment.  (See id.; May 9 Minutes at 2).  By the time of the guilty plea, Fuller was represented by Daniel Scott, Esq.  (P. 2).

| The Court: | Apart from the DA's position with respect to sentence, is anyone threatening you to get you to plead guilty? |
| --- | --- |
| Fuller: | Yes, the DA. |
| The Court: | Other than that, is anyone else threatening you? |
| Fuller: | No. |

(Id. at 11-12, 18-19).

During Fuller's guilty plea allocution, Justice Drager also explored the factual basis for each of the three burglary charges. She first asked Fuller whether, on January 4, 2001, he had committed the crime of entering and remaining unlawfully in the West 27th Street building with the intent to commit a crime therein. (Id. at 12-13). Fuller conceded that he had stolen a wallet on that occasion, but denied entering or remaining in the building unlawfully, explaining that he was there to deliver a package for his job. (Id. at 13-14). Upon further questioning, however, Fuller admitted that he had no right to be in Whitehurst's office to remove her wallet. (Id. at 14).

Fuller similarly admitted stealing a wallet from an office in a different building on April 11, 2001, but denied that he had entered or remained in the building unlawfully, stating that he was there to apply for a job and was "waiting for an application." (Id. at 15-16). However, in response to the Justice's questions, Fuller conceded that he had stolen the wallet from an office to which he had not been sent in response to his request for a job application. (Id. at 16).

10

Fuller also refused to admit that he had entered or remained in a building unlawfully on April 13, 2001. (Id. at 18). However, once again, Fuller admitted that he had stolen a wallet from an office in the building that day. (Id.). When he was asked whether he had permission to take that wallet, Fuller at first said "Yeah," but then immediately changed his answer to "no." (Id.).

Later in the allocution, when Justice Drager observed that Fuller was "giving up [his] right to appeal" as part of his plea bargain, Fuller responded that he was unwilling to do so because the prosecutor had improperly "amend[ed] both indictments on her own." (Id. at 20). After Fuller again conferred with his attorney, (id.), Justice Drager observed that "nothing improper" had occurred. (Id. at 23). As she explained, although two grand jury numbers had been assigned to Fuller's case because there were two separate complaints and arrest warrants, only one indictment was returned. (Id. at 21-23). Justice Drager noted that even if two indictments had been returned, they likely would have been consolidated "given how the arrest occurred." (Id. at 22). Justice Drager further informed Fuller that a defendant never waives the right to appeal a "jurisdictional defect." (Id. at 25).

After offering this explanation, the Justice asked Fuller if he understood that he was waiving his right to appeal. (Id. at 26). The following colloquy then ensued:

The Court:    You haven't answered my question.

Fuller:        What's the question?

11

| | |
|---|---|
| The Court: | Do you understand by this plea in exchange for the sentence you will receive - - |
| Fuller: | Yeah, yeah, yeah, yeah. |
| The Court: | You are waiving your right to appeal? |
| Fuller: | Yeah, yeah, yeah. |

(Id.).

When Justice Drager then asked Fuller if he was pleading guilty voluntarily and of his own free will, he responded, "Yes.  I don't have no choice."  (Id. at 26-27).

Following his guilty plea, Fuller was arraigned on a predicate felony statement and admitted that he was a second felony offender.  (Id. at 28-29).  Fuller also evidently was handed a written form concerning the waiver of his right to appeal.  (Id. at 27, 30).  During this portion of his appearance before Justice Drager, Fuller and his attorney conferred three more times.  (Id. at 28-30).  Notwithstanding these consultations, at other times during his appearance before Justice Drager, Fuller expressed considerable disdain for his attorney.  (See, e.g., P. 10 (Fuller:  "Man, don't talk now.  You ain't said shit all this time . . . . I don't want to hear you now."), 25-26 (Fuller: "Please, please, please, not now.")).

6. <u>Sentencing</u>

On October 29, 2001, as previously agreed, Justice Drager imposed a

sentence of two to four years on each of the burglary counts, to be served consecutively,

resulting in an aggregate indeterminate sentence of six to twelve years. (S. 6).[6]

B. <u>Subsequent Procedural History</u>

1. <u>Motion to Vacate Judgment</u>

After his sentencing, Fuller filed a <u>pro se</u> motion to vacate his judgment of

conviction pursuant to Section 440.10 of the New York Criminal Procedure Law

("CPL"). (<u>See</u> Wen Decl. Ex. B (Aff. of Bernard Fuller in Supp. of Mot. to Vacate J.,

sworn to on Oct. 30, 2001 ("Fuller Aff."))). Fuller's principal contention was that the

trial court lacked subject matter jurisdiction because the prosecutor had presented

dismissed charges to a second grand jury without prior court approval and had improperly

consolidated the charges against him in a single indictment.[7] (Fuller Aff. ¶ 2). In her

opposition papers, Ms. Jampol explained that Fuller "had two criminal court indictments,

---

[6]     On the date of sentencing, Justice Drager learned that Fuller had filed an Article
78 proceeding in which he sought a writ of prohibition against Justices Scherer and Atlas based
on his continuing belief that there were two indictments. (<u>See</u> S. 3-4; Wen Decl. Ex. C ¶ 6).
After reviewing his papers and the prior proceedings, Justice Drager concluded that there was no
reason to postpone the sentencing. (S. 4-5). Thereafter, on December 13, 2001, the Appellate
Division denied Fuller's application for a writ of prohibition and dismissed his petition. <u>Fuller v.
Scherer</u>, 289 A.D.2d 1101 (1st Dep't 2001).

[7]     Fuller's motion relied on CPL § 190.75 as a basis for his claim that certain of the
charges against him were not lawfully submitted to the grand jury. (<u>See</u> Fuller Aff. ¶ 3). That
statute limits a prosecutor's ability to resubmit charges which previously were dismissed by
another <u>grand jury</u>. <u>See</u> CPL § 190.75 (McKinney 2007).

13

dockets 2001NY032826 and 2001NY033487, which were presented simultaneously to the grand jury and were indicted under one indictment number, Indictment #2325/2001." (Wen Decl. Ex. C ¶ 7). The prosecutor further explained that any entry to the contrary in Fuller's rap sheet was wrong.[8] (Id.).

On February 26, 2002, Justice Drager denied Fuller's motion. (Wen Decl. Ex. E at 2-3). In her order, the Justice noted that she had reviewed the indictment and grand jury minutes and was satisfied that all of the charges were presented to a single grand jury on April 18, 2001. (Id. at 2). As the Justice further explained, "the consolidation of the two indictment numbers . . . by Judge Scherer was done to rectify a clerical error." (Id.) (emphasis added). Thus, "there were never two indictments in this matter[;] only two indictment numbers." (Id.).

Fuller moved pro se for leave to appeal the denial of his CPL § 440.10 motion. (Id. Ex. F). On May 28, 2002, the Appellate Division denied that application. (Id. Ex. H).

2.    Direct Appeal

Fuller's appellate counsel appealed his conviction to the Appellate Division claiming that (a) his waiver of his right to appeal was involuntary, (b) his guilty plea allocution as to one of the three burglary counts was legally insufficient because he

---

[8]    The prosecutor's reference to two "indictments" appears inaccurate. Because the charges against Fuller were assigned two docket numbers but only one indictment number, the prosecutor probably should have stated in her affirmation that there were two criminal court "cases" (not two criminal court indictments) indicted under one docket number.

negated the essential element that he have entered the office unlawfully on January 4, 2001, with the intent to commit a crime, (c) he was improperly denied a hearing regarding an unduly suggestive police identification procedure, and (d) his sentence was excessive. (Pet'r's Br. at 12, 17, 23, 26).  Fuller also submitted his own pro se brief in which he argued that he was indicted improperly and that his constitutional right to be present during all material stages of the trial was violated because Justice Scherer consolidated the indictments after he left the courtroom.  (Wen Decl. Ex. K).

On December 4, 2003, the Appellate Division unanimously affirmed Fuller's conviction.  People v. Fuller, 2 A.D.3d 162, 162-63 (1st Dep't 2003).  In its decision, the Appellate Division concluded that Fuller's challenge to the adequacy of his guilty plea was unpreserved because he had not first moved to withdraw it.  Id.  The court further held that, "[i]n any event, . . . [Fuller had] knowingly, intelligently and voluntarily pleaded guilty and waived his right to appeal."  Id. at 163.  Finally, the court concluded that Fuller's waiver of his right to appeal precluded further judicial review of his remaining claims.  Id.

Fuller and his counsel both submitted letters to the New York Court of Appeals seeking leave to appeal from the Appellate Division decision.  (Wen Decl. Ex. N).  The letters sent by Fuller's counsel focused on the voluntariness of Fuller's waiver of his right to appeal, but also asked the Court of Appeals to review all of the issues that had

been before the Appellate Division, including the issues that Fuller had raised pro se. (See id.).

On March 5, 2004, Judge Carmen B. Ciparick summarily denied Fuller's leave application. People v. Fuller, 2 N.Y.3d 739 (2004). Fuller did not subsequently file a petition for a writ of certiorari.[9]

### 3. Habeas Petition

On June 2, 2004, the Pro Se Office of this Court timely received Fuller's Petition, which is dated April 27, 2004. (Pet. at 1, 7). In his Petition, Fuller contends that: (a) his guilty plea was involuntary; (b) he was improperly denied a Wade hearing[10] regarding an unduly suggestive police show-up; (c) his attorney's failure to object to irregularities before the grand jury constituted a denial of the effective assistance of counsel; and (d) the trial court lacked subject matter jurisdiction because the indictments were improperly consolidated, thereby rendering the proceedings against him violative of due process. (Pet. ¶ 12.A-E (Attach)).

On December 28, 2006, Fuller submitted an Addendum to his Petition, which was also served on the Respondent. (Docket No. 11). In that Addendum, Fuller asserted two additional claims: (a) that his guilty plea allocution with respect to the first burglary count was legally insufficient because it negated the required showing that he

---

[9]     His conviction therefore became final on June 3, 2004. See Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000).

[10]     See United States v. Wade, 388 U.S. 218 (1967).

entered the office unlawfully with the intent to commit a crime; and (b) that his

constitutional right to be present during all material stages of the trial was violated

because Justice Scherer consolidated the indictments after he left the courtroom.  (Id. at 3,

6-8).

By order dated January 31, 2006, Your Honor referred this case to me.

(Docket No. 3).  Thereafter, by order dated July 24, 2006, I directed that the Respondent

file an answer or other pleading by October 25, 2006.  (Docket No. 4).  Although a copy

of that order was sent to the Manhattan District Attorney's Office by certified mail, the

Respondent is represented in this proceeding by the New York State Attorney General,

whose office apparently never received a copy of my order that had been forwarded to it.

(See Docket No. 6).  Accordingly, I subsequently directed the Respondent to submit

opposing papers by February 20, 2007.  (Docket Nos. 5-6).  The Respondent complied

with that order by serving and filing her answering papers on February 16, 2007.  (Docket

Nos. 7-10).

II.    Discussion

A.    Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously

determined in state court.  Herrera v. Collins, 506 U.S. 390, 401 (1993).  Rather, a state

prisoner seeking habeas relief under Section 2254 must show that he is "in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). The petitioner bears the burden of proving, by a preponderance of the

evidence, that his rights have been violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir.

1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in Jones v. Stinson, the Supreme Court has

"construed the amended statute so as to give independent meaning to 'contrary [to]' and

'unreasonable.'" 229 F.3d 112, 119 (2d Cir. 2000). "Under the 'contrary to' clause, a

federal habeas court may grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than [the] Court has on a set of materially indistinguishable facts."

Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application"

clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams, 529 U.S. at 389.

B.    Procedural Default

The Respondent concedes that Fuller has exhausted each of the claims he seeks to bring before this Court. (See Resp't's Mem. at 17). Nonetheless, even when a

petitioner presents a colorable constitutional claim that is fully exhausted, a federal court is precluded from reviewing the claim if the state court's prior denial of it rested on an adequate and independent state ground.  E.g., Lee v. Kemna, 534 U.S. 362, 375 (2002); Harris v. Reed, 489 U.S. 255, 262 (1989); Wainwright v. Sykes, 433 U.S. 72, 81 (1971).  A procedural default qualifies as such an adequate and independent state ground, Harris, 489 U.S. at 262, unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996); accord Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000).

Additionally, when a state court relies on a state procedural bar, the petitioner is precluded from seeking habeas relief even though the state court has ruled in the alternative on the merits of his federal claim.  Glenn, 98 F.3d at 724 (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)).  In determining whether a claim may be heard, courts "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'"  Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (quoting Jones, 229 F.3d at 118).  However, when the last court to issue a reasoned decision relies on a state procedural bar, the court will presume that subsequent

decisions rejecting the claim without discussion relied on the bar and did not silently

consider the merits. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Here, the Appellate Division was the last state court to issue a reasoned

decision concerning Fuller's case. In that decision, the Appellate Division held that

Fuller's challenge to his guilty plea was unpreserved because he did not seek to withdraw

it prior to filing his appeal. Fuller, 2 A.D.3d at 162-63. The court's express reliance on

Fuller's failure to preserve his claim constitutes an adequate and independent state ground

for its denial. See Harris, 489 U.S. at 265 n.12; Glenn, 98 F.3d at 724-25.

Accordingly, Fuller is barred from challenging the voluntariness of his

guilty plea on habeas review, provided that the state rule on which the Appellate Division

relied was "firmly established and regularly followed." See Cotto v. Herbert, 331 F.3d

217, 239-41 (2d Cir. 2003). That a defendant's challenge to his guilty plea is unpreserved

unless he first moves to withdraw his plea or vacate the judgment is such a rule. See

Robinson v. Perlman, No. 02 Civ. 8709, 2005 U.S. Dist. LEXIS 5058, at *16-18

(S.D.N.Y. Mar. 25, 2005) (Report & Rec. of K. Fox, Mag. J.); People v. Lopez, 71

N.Y.2d 662, 665-66 (1988); People v. Claudio, 64 N.Y.2d 858, 858-59 (1985); People v.

Pellegrino, 60 N.Y.2d 636, 637 (1983); People v. Bell, 47 N.Y.2d 839, 840 (1979);

People v. Warren, 47 N.Y.2d 740, 741 (1979). Here, Fuller did not pursue either of these

remedies.[11]

---

[11] Although Fuller did file a CPL § 440.10 motion to vacate his judgment of
conviction before commencing this proceeding, his papers did not address the voluntariness of

Fuller consequently cannot challenge the voluntariness of his plea in this forum unless he can demonstrate both cause for his default and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. To establish cause for a default, a petitioner must adduce "some objective factor external to the defense" which explains why he did not raise the claim previously. Murray v. Carrier, 477 U.S. 478, 488 (1986); Gonzalez v. Sullivan, 934 F.2d 419, 422 (2d Cir. 1991). The circumstances giving rise to cause include (a) interference by government officials which makes compliance impracticable, (b) situations in which the factual or legal basis for a claim was not reasonably known by counsel, and (c) ineffective assistance of counsel. See Murray, 477 U.S. at 488; Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994). A showing of prejudice requires a petitioner to demonstrate that the failure to raise the claim previously had a substantial injurious effect on the petitioner's case such that he was denied fundamental fairness. Reyes v. New York, No. 99 Civ. 3628 (SAS), 1999 U.S. Dist. LEXIS 17907, at *8 (S.D.N.Y. Nov. 22, 1999). To establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).

In his Petition, Fuller argues that his trial counsel was ineffective. (Pet. ¶ 12.C (Attach); see also Addendum 1-2). While this might be a means of establishing

his guilty plea. (See Wen Decl. Ex. B).

cause for a procedural default, Fuller's ineffectiveness argument relates solely to the

alleged actions or shortcomings of his attorneys in the period prior to the acceptance of

his guilty plea.  Fuller has not alleged that his trial or appellate counsel did anything that

interfered with his ability to move to vacate his plea before he attacked its voluntariness

and sufficiency on direct appeal.  He also has not identified any other reason for his

failure to make a timely motion to set aside his guilty plea.

It follows that Fuller has not shown cause for his procedural default.

Additionally, although Fuller contests the sufficiency of his guilty plea to one of the three

burglary counts, even with respect to that count he does not suggest that he is actually

innocent.  Fuller therefore is barred from attacking the voluntariness or sufficiency of his

guilty plea to that count in this habeas proceeding.

C.    Effect of Fuller's Voluntary Guilty Plea

Fuller's guilty plea also gives rise to another obstacle to the assertion of his

present claims.  As the Supreme Court observed in Tollett v. Henderson, 411 U.S. 258,

267 (1973), "a guilty plea represents a break in the chain of events which has preceded it

in the criminal process."  Consequently, "[w]hen a criminal defendant has solemnly

admitted in open court that he is in fact guilty of the offense with which he is charged, he

may not thereafter raise independent claims relating to the deprivation of constitutional

rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary

and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective]."  Id.

The claims raised in Fuller's Petition and his Addendum thereto all relate to events occurring before he entered his guilty plea.  Accordingly, unless Fuller is able to establish that his plea of guilty is involuntary, the Supreme Court's holding in Tollett would preclude him from obtaining habeas review of those claims.  Here, however, even his involuntariness claim is barred because it is procedurally defaulted.

In Lefkowitz v. Newsome, 420 U.S. 283, 289-90 (1975), the Supreme Court recognized a limited exception to Tollett applicable when a state law permits a defendant to prosecute a direct appeal despite his guilty plea.  In New York State, this exception opens the door to post-guilty plea challenges to such jurisdictional issues as the sufficiency of an indictment.  People v. Hansen, 95 N.Y.2d 227, 230 (2000).  However, under New York law, an "indictment is rendered jurisdictionally defective only if it does not charge the defendant with the commission of a particular crime, by, for example, failing to allege every material element of the crime charged or alleging acts that do not equal a crime at all."  Id. at 231.  Accordingly, if Fuller's guilty plea was knowing and voluntary, the Lefkowitz exception would, at best, permit him to pursue his claim that a second grand jury had improperly indicted him on charges rejected by a prior grand jury.

D.    Merits

Notwithstanding these impediments to Fuller's petition, there is always the possibility that another court could reach a different conclusion regarding the threshold issues of procedural default and waiver. Moreover, it is understandable that an inmate such as Fuller facing a substantial jail sentence would want the merits of his claim to be reached. I therefore have considered each of Fuller's claims in this Report and Recommendation.

1.    Voluntariness of Fuller's Guilty Plea

A defendant who pleads guilty "waives a number of fundamental constitutional rights." Spence v. Sup't, Great Meadow Corr. Facility, 219 F.3d 162, 167 (2d Cir. 2000). The Due Process Clause of the Fourteenth Amendment consequently requires that such a plea be entered "voluntarily, knowingly, and intelligently." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005); see also Heron v. New York, No. 98 Civ. 7941 (SAS), 1999 U.S. Dist. LEXIS 18907, at *12 (S.D.N.Y. Dec. 8, 1999) ("A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced."); Gomez v. Duncan, No. 02 Civ. 0846 (LAP)(AJP), 2004 U.S. Dist. LEXIS 898, at *58 (S.D.N.Y. Jan. 27, 2004) ("A plea is involuntary where the defendant did not have 'knowledge of the nature of the constitutional protections he will forgo by entering his plea.'"). Although many of the rights that a defendant waives through a guilty plea are federal

constitutional rights, <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969), a federal court reviewing a state prisoner's habeas petition must defer to the determination of the state court as to the facts surrounding that plea. <u>Ayala v. New York</u>, No. 03 Civ. 2762 (AKH), 2004 U.S. Dist. LEXIS 4135, at *16 (S.D.N.Y. Mar. 16, 2004) (citing 28 U.S.C. § 2254(e)(1)). Moreover, the statements at a defendant's guilty plea allocution "carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." <u>Adames v. United States</u>, 171 F.3d 728, 732 (2d Cir. 1999) (citations and internal quotation marks omitted).

Fuller contends that his guilty plea was involuntary because he pleaded guilty "reluctantly" only after being "repeatedly told of the streng[th] of the case against him" and "that a potential appellate issue did not exist." (Pet. ¶ 12.A (Attach)). Fuller also complains that he was informed of the consequences of waiving his right to appeal "through the use of technical legal jargon." (<u>Id.</u>).

Turning to the first of these assertions, by the time that Fuller pleaded guilty, the People had located disinterested "civilian witnesses" who would testify about each of the burglaries. (<u>See</u> P. 6). The court also had conducted a <u>Huntley</u> hearing and determined that Fuller's confession to two of those burglaries was voluntary and therefore admissible at trial. (H. 74-76). Given the strength of the People's case, it is not surprising that Fuller's counsel urged him to plead guilty. The rendering of that advice, even if couched in strong terms, does not constitute undue coercion. <u>See, e.g.</u>, <u>Lunz v.</u>

26

Henderson, 533 F.2d 1322, 1327 (2d Cir. 1976); Meachem v. Keane, 899 F. Supp. 1130, 1141 (S.D.N.Y. 1995) (Report & Rec. of Katz, Mag. J.) (citing Lunz, 533 F.2d at 1327).

In his papers, Fuller also suggests that his plea was rendered involuntary because he was repeatedly told that he did not have a meritorious appellate issue. (Pet. ¶ 12.A (Attach)). This presumably is a reference to his counsel's statements (and those of the court) indicating that there were no irregularities in the grand jury proceedings leading to his indictment. Suffice it to say, Fuller has yet to show that any of the charges against him were presented to two different grand juries, much less that the first grand jury refused to indict him on charges which were later contained in an indictment returned by a second grand jury. Indeed, the grand jury minutes plainly show that a single grand jury was asked to consider charges arising out of all three burglaries after all three victims had testified before that grand jury on a single day. (G. 3, 19, 25, 37-38). There consequently would have been no reason to seek two different indictments from two different grand juries.

It is, of course, possible that some of the charges in the first-filed criminal complaint may have been dismissed before the indictment against him was returned. This, however, did not preclude incorporation of those charges in an indictment. See People v. Hodge, 53 N.Y.2d 313, 319 (1981) (case may be presented to a grand jury even after it has been dismissed by the court following a preliminary hearing); People v. Laskowski, 340 N.Y.S.2d 787, 794 (Nassau County Ct. 1973) ("After the felony

27

complaint had been dismissed and the defendant discharged, the matter resumed the status of a criminal cause which could lie dormant until the expiration of the applicable statute of limitations, or, if sooner presented to a grand jury, it could ripen into an indictment.").

Accordingly, the mere fact that Fuller's attorney may have tried to convince him that the grand jury presentation did not give rise to a meritorious appellate issue does not constitute undue coercion.

There also is no basis for Fuller's suggestion that the state court somehow bamboozled him into pleading guilty through the use of technical jargon. At the outset, as Justices Atlas and Drager noted, Fuller was hardly a newcomer to the criminal justice system. (See H. 5 (observation that Fuller had "five prior felony convictions"); P. 4 ("You have a substantial history for similar type crimes."), 6 ("You've been around this system long enough to know that offers can be put on a table and then they can be withdrawn . . . .")). The plea arrangement that Fuller was offered also consisted of only two elements. First, in exchange for his plea of guilty, Fuller was to be sentenced to a term of two to four years on each burglary count, to be served consecutively, resulting in an aggregate indeterminate sentence of six to twelve years. (P. 2-3, 7). Second, in exchange for that substantially-reduced sentence, Fuller was required to waive his right to appeal anything other than jurisdictional issues. (Id. at 20, 25-26).

It is clear that Fuller understood the first of these two terms of his plea agreement since he repeatedly expressed his unhappiness that he was not being offered

even greater leniency. (<u>See</u> <u>id.</u> at 10 ("This is kangaroo shit here. Twelve to six for theft of credit card[s]."), 11 ("Twelve years. People killing people get less time. Shit.")). Moreover, during the course of his guilty plea allocution, Fuller expressly acknowledged that he understood this aspect of his plea agreement.[12] (<u>Id.</u> at 12 ("I take the twelve years. That's all, simple as that."); <u>see</u> <u>also</u> <u>id.</u> at 26 (acknowledgment that, apart from the promise that Fuller would be sentenced to two to four years on each count, to be served consecutively, "[no] other promise [had] been made to [him] with respect to sentencing")). Given these statements, Fuller cannot now credibly argue that he did not understand this aspect of his plea agreement.

Turning to the second material element of his plea arrangement, when Justice Drager first raised the issue of waiving the right to appeal, Fuller protested that he would not, referring to the prosecutor's alleged misconduct before the grand jury. (<u>Id.</u> at 20). After a lengthy explanation of why she considered Fuller's grand jury impropriety claim to be baseless, Justice Drager assured Fuller that "you never waive your right to appeal a jurisdictional defect." (<u>Id.</u> at 25). The Justice then asked Fuller again whether he understood that in exchange for the promised sentence he was waiving his right to appeal. (<u>Id.</u> at 26). Fuller responded, "Yeah, yeah, yeah, yeah."[13] (<u>Id.</u>). Although he also

---

[12]    Fuller also acknowledged that his plea might lead to the enhancement of a future sentence if he subsequently was convicted of an additional felony. (P. 20).

[13]    It appears that Fuller may also have executed a written waiver of his appellate rights. (<u>See</u> <u>id.</u> at 27, 30).

contended that he was pleading guilty because he had "no [other] choice," (id. at 26-27), it is clear that this was simply an acknowledgment of the strength of the People's case, not an indication that anyone had improperly overborne his will.

Near the end of his guilty plea, Fuller represented, in response to Justice Drager's questions, that he was pleading guilty voluntarily and of his own free will (although he also noted that he had no other choice). (Id.). After reviewing the record of that plea, the Appellate Division concluded that Fuller had "knowingly, intelligently and voluntarily pleaded guilty and waived his right to appeal." Fuller, 2 A.D.2d at 163. Fuller has not presented any evidence – much less clear and convincing evidence – that these findings were incorrect. Accordingly, he is not entitled to habeas relief on the theory that his guilty plea was entered into involuntarily or without adequate knowledge of its consequences.

2.      Pretrial Identification

Fuller's next contention is that a police show-up conducted at the time of his arrest was unduly suggestive. Although show-ups orchestrated by the police are generally disfavored, neither the federal nor the New York courts consider them so unreliable as to warrant the automatic exclusion of testimony concerning the resulting identifications. See, e.g., United States v. Bautista, 23 F.3d 726, 729 (2d Cir. 1994) ("[W]e will exclude a pre-trial identification only if it was both produced through an unnecessarily suggestive procedure and unreliable.") (emphasis omitted); People v.

Duuvon, 77 N.Y.2d 541, 544 (1991) ("[P]rompt showup identifications by witnesses following a defendant's arrest at or near the crime scene have been generally allowed and have never been categorically or presumptively condemned.").  Indeed, in Bautista, the Second Circuit recognized that a prompt show-up at the scene of a crime serves "a very valid function:  to prevent the mistaken arrest of innocent persons."  23 F.3d at 730.

Consequently, to prevail on a show-up claim, a criminal defendant must establish that the procedures employed by the police were so suggestive that they created "a very substantial likelihood of irreparable misidentification."  United States v. Mohammed, 27 F.3d 815, 821 (2d Cir. 1994) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).  The focus of the inquiry is on the possibility of misidentification, not the conduct of the police, because a suggestive procedure "does not in itself intrude upon a constitutionally protected interest."  Wray v. Johnson, 202 F.3d 515, 524 (2d Cir. 2000) (quoting Manson v. Brathwaite, 432 U.S. 98, 113 n.13 (1977)).  Thus, "even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability."  Mohammed, 27 F.3d at 821 (quoting United States v. Simmons, 923 F.2d 934, 950 (2d Cir. 1991)); see also Manson, 432 U.S. at 114 ("[R]eliability is the linchpin in determining the admissibility of identification testimony . . . .").

Fuller challenges Grennan's identification of him as unduly suggestive because the police allegedly asked her to identify Fuller "as they led [him] away in

handcuffs." (Pet. ¶ 12.B (Attach)).  The record is unclear as to whether Fuller was, in fact, handcuffed when Grennan identified him as the man who had been in her office two days earlier.  However, even if Fuller were able to show that he was handcuffed at that point, this does not suggest that the circumstances surrounding Grennan's identification of him were unduly suggestive.  Indeed, Grennan testified before the grand jury that she recognized Fuller before the police arrived.  (G. 21-22).  Grennan also had been in close proximity to Fuller only two days earlier when she observed him behind her desk and asked what he was doing.  (Id. at 20).  As she explained to the grand jury, the two of them then "went back and forth for a little while" before Fuller ran away.  (Id.).

Because Grennan identified Fuller even before the police were on the scene, it is by no means clear that the police procedures used here can fairly be characterized as a "show-up."  In any event, Fuller plainly has not shown, as he must, that Grennan's identification of him on April 13, 2001, was unreliable.  Accordingly, the trial court did not abuse its discretion by denying Fuller a Wade hearing.  See Dunnigan v. Keane, 137 F.3d 117, 129 (2d Cir. 1998) ("[T]here is no 'per se rule compelling such a hearing in every case.'") (quoting Watkins v. Sowders, 449 U.S. 341, 349 (1981)).

### 3.    Ineffective Assistance of Counsel

Fuller also contends that he was denied the effective assistance of trial counsel.  In Hill v. Lockhart, 474 U.S. 52, 57 (1985), the Supreme Court held that ineffective assistance of counsel claims arising out of guilty pleas must be judged by the

standards set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Fuller therefore

must show that (a) his counsel's performance "fell below an objective standard of

reasonableness," and (b) there is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

<u>Strickland</u>, 466 U.S. at 688, 694.  Moreover, under <u>Strickland</u>, there is a "strong

presumption that [a lawyer's] conduct falls within the wide range of reasonable

professional assistance."  <u>Id.</u> at 689.  As the Second Circuit has noted, "[t]he <u>Strickland</u>

standard is rigorous, and the great majority of habeas petitions that allege constitutionally

ineffective counsel founder on that standard."  <u>Lindstadt v. Keane</u>, 239 F.3d 191, 199 (2d

Cir. 2001).

        Fuller alleges that each of the three lawyers who represented him brushed

aside his contention that he was being prosecuted on dismissed charges which had been

improperly consolidated.  (Pet. ¶ 12.C (Attach); Addendum at 1-2).  As set forth above,

however, there was no procedural defect in the manner in which the grand jury indictment

against Fuller was returned.  Accordingly, the argument that Fuller contends his counsel

should have advanced would not have led to the dismissal of any of the charges against

him.  Moreover, the "[f]ailure to make a meritless argument does not amount to

ineffective assistance."  <u>United States v. Arena</u>, 180 F.3d 380, 396 (2d Cir. 1999) (citing

<u>Strickland</u>, 466 U.S. at 689).

Fuller also suggests that he "lacked meaningful advice of counsel" during his plea. (Pet. ¶ 12.A (Attach)). To the extent that this complaint relates to something other than Fuller's baseless contentions regarding the grand jury proceedings, it lacks any factual support. While it is true that there were periods during Fuller's guilty plea allocution when additional consultation with his counsel might have been beneficial, the record clearly shows that it was Fuller who made the unilateral decision not to confer with his attorney. (See P. 10 (Fuller: "Man, don't talk now . . . . I don't want to hear you now."), 11 (Fuller: "No, I made up my own mind . . . . There's nothing to discuss," "I discussed it with myself."), 25-26 (Fuller: "Please, please, please, not now.")). Additionally, the plea minutes reflect numerous times where Fuller did confer with his attorney before, during, and after his guilty plea allocution. (See id. at 5, 20, 28, 30). Having chosen not to confer with his attorney on other occasions when he had the opportunity, Fuller can scarcely complain that he did not have adequate legal advice during his guilty plea. In any event, despite his unilateral decision not to communicate with his attorney at certain times, it is clear that he received the benefit of a favorable plea bargain. Fuller therefore cannot meet the second branch of the Strickland test by showing that he was prejudiced by a defect in his counsel's representation of him.

4.    Absence During Consolidation

Fuller further alleges that he had a right to be present in the courtroom when Justice Scherer consolidated the two indictments in which he was named on May 9, 2001.

34

(Addendum at 6). This claim fails for at least three reasons. First, because there was only one indictment, there was never a consolidation of the charges in two indictments, proper or otherwise.

Second, Fuller was present when the procedural snafu was discussed. (May 9 Minutes at 3, 6). Any steps that may thereafter have been taken to "straighten out the paperwork," (id. at 5), were ministerial and did not constitute a critical phase of the case which Fuller had a constitutional right to attend. See Rushen v. Spain, 464 U.S. 114, 117-18 (1983).

Finally, even if the deletion of one of the indictment numbers constituted a critical stage of Fuller's case, the right to be present is triggered only when the defendant's absence could "frustrate the fairness of the proceedings." Sanchez v. Duncan, 282 F.3d 78, 81 (2d Cir. 2002) (quoting Farretta v. California, 422 U.S. 806, 819-20 n.15 (1975)); accord Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006). Fuller contends that he could have explained "what transpired those two days" had he been in the courtroom. (See Addendum at 6). If this is a reference to the dates he was arraigned on the criminal court complaints, his presence would not have contributed to the fairness of the proceedings because there was no dispute as to what took place when he was arraigned. If this is a reference to what occurred before the grand jury, Fuller has not shown that he had any personal knowledge regarding that subject. In fact, it appears that he was not even a grand jury witness. Accordingly, because Fuller had already

advised the court of his position regarding the grand jury proceedings, his presence when any consolidation of charges occurred would not have added anything to the discussion. He therefore did not have a constitutional right to be present when Justice Scherer (or more likely a clerical employee) corrected the court's records.  See Snyder v. Massachusetts, 291 U.S. 97, 106 (1934) (due process does not require defendant's "presence when presence would be useless").

        5.      Sufficiency of the Evidence

Fuller's final argument is that his conviction on one of the three burglary counts was not supported by legally sufficient evidence because his allocution established that he had not entered the office building unlawfully with the intent to commit a crime. (Addendum at 3-4, 8).  To make out a prima facie case of third degree burglary, the People must prove that the defendant knowingly entered or remained behind unlawfully in a building with the intent to commit a crime.  See PL § 140.20; People v. Barney, 99 N.Y.2d 367, 371 (2003); People v. Gaines, 74 N.Y.2d 358, 363 (1989).  Thus, the fact that a defendant may have entered a building lawfully does not preclude his conviction if he intended to commit a crime at a point when he unlawfully remained behind.  See Gaines, 74 N.Y.2d at 363.

During his plea allocution, Fuller claimed that, because he was delivering a package as a messenger on January 4, 2001, he was authorized to be in the building.  (P. 13-14).  However, when he was asked by Justice Drager, "[D]id you have any right once

36

you were in that office to remove any property from that office?" Fuller responded, "No, I didn't." (Id. at 14).

In People v. Durecot, 224 A.D.2d 264 (1st Dep't 1996), a defendant left a public reception area and went behind the receptionist's desk, a private area, from which he took the receptionist's purse. On these facts, the Appellate Division held that even if the defendant was entitled to enter the public areas of the building, the evidence was sufficient to prove that he was guilty of the crime of third degree burglary. Id. Similarly, in People v. Terry, 2 A.D.3d 977, 978 (3d Dep't 2003), the court held that a "defendant's acts of entering an employee's cubicle and going under her desk to remove her wallet from her purse . . . constituted sufficient conduct to establish the crime [of third degree burglary.]" See also PL ¶ 140.00(5) ("A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public.")).

Here, Fuller unquestionably left the public areas to which an outside messenger could be expected to have access when he entered Whitehurst's office without permission. Accordingly, because he remained behind unlawfully to commit a crime, Fuller's claim that his guilty plea concerning the first of his three robberies was legally insufficient is baseless.

IV.    Conclusion

For the foregoing reasons, the Court should dismiss Fuller's Petition. Furthermore, because Fuller has not made the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Richard J. Holwell, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Holwell. Any failure to file timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated:    New York, New York
          November 19, 2007

                                        /FRANK MAAS
                                        United States Magistrate Judge

38

Copies to:

Bernard Fuller
DIN # 07-A-4580
Bare Hill Road
P.O. Box 10
Malone, New York 12953-0010

Frederick H. Wen
Assistant Attorney General
120 Broadway
New York, New York 10271